

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 17, 2021.**

_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUTPCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 13-52576-CAG |
| | § | |
| Leroy Ramirez and | § | |
| Erika Herrera Ramirez, | § | |
| | § | CHAPTER 7 |
| Debtors. | § | |

**ORDER DENYING BANK OF AMERICA, N.A.'S MOTION TO PROHIBIT HUMPHREYS WALLACE HUMPHREYS FROM SEEKING COMPENSATION (ECF NO. 45); REGARDING BANK OF AMERICA, N.A.'S MOTION FOR (I) CLARIFICATION OF SETTLEMENT AGREEMENT & ORDER TO APPROVE SETTLEMENT AGREEMENT AND (II) TO COMPEL MEDIATION (ECF NO. 51); AND GRANTING CHAPTER 7 TRUSTEE'S APPLICATION *NUNC PRO TUNC* TO EMPLOY HUMPHREYS WALLACE HUMPHREYS AS SPECIAL LITIGATION COUNSEL FOR THE BANKRUPTCY ESTATES (ECF NO. 57)**

Came on for consideration Bank of America, N.A.'s ("BANA") Motion to Prohibit

Humphreys Wallace Humphreys P.C. ("HWH") from Seeking Compensation ("Motion to Prohibit

1

Compensation") (ECF No. 45), BANA's Motion (I) for Clarification of Settlement Agreement and Order Approving Settlement Agreement and (II) to Compel Mediation (separately referred to as "Motion for Clarification" and "Motion to Compel") (ECF No. 51), and Trustee's Application *Nunc Pro Tunc* to Employ HWH as Special Litigation Counsel for the Bankruptcy Estates[1] ("Application *Nunc Pro Tunc* to Employ HWH") (ECF No. 57).[2] The Court held a hearing on August 10, 2021. At that hearing, the Court denied the Motion to Compel and took the remaining matters under advisement.

For the reasons stated herein, the Court grants the Trustee's Application *Nunc Pro Tunc* to Employ HWH with conditions. The Court denies BANA's Motion to Prohibit Compensation. With respect to the Motion for Clarification, the Court finds that both the Debtors and the Trustee, on behalf of the estate, are entitled to pursue claims against BANA in the lawsuit styled *Leroy Ramirez v. Bank of America, N.A., et al.*, filed in the 156th Judicial District, Bee County, Texas (Cause No. B-17-1423-CV-B) ("Bee County Matter"). Additionally, the Court finds that the Law Offices of Bill Clanton, P.C. and HWH are permitted to represent the estate in the Bee County Matter.

## JURISDICTION

As a preliminary matter, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This case is referred to this Court by the Standing Order of Reference entered in this District.

---

[1] The Court will italicize the phrase "nunc pro tunc" when referring to Trustee's Application *Nunc Pro Tunc* to Employ HWH because Trustee styled its Application with italics. The Court will also use italics when a quote contains the phrase in italics. Bluebook Rule 7(b) instructs that Latin phrases commonly used in legal writing, such as "quid pro quo" and "mens rea," should not be italicized. The Court has observed that practitioners use the phrase "nunc pro tunc" with sufficient frequency in the bankruptcy context to not require italics. Therefore, in the body of this ruling, unless referring to Trustee's Application *Nunc Pro Tunc* to Employ HWH or quoting a source that uses italics, the Court will not italicize the phrase.

[2] The parties filed multiple responses, replies, joinders, and supplements thereto (ECF Nos. 52, 53, 59, 60, 65, 68, 69, 72, 73, 76, 77, and 80).

**FINDINGS AND CONCLUSIONS**

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052(a), made applicable to this hearing by Fed. R. Bankr. P. 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

**FACTUAL AND PROCEDURAL BACKGROUND**

Co-debtors Leroy and Erika Ramirez filed a Chapter 13 petition on September 24, 2013. (ECF No. 1). On October 16, 2013, Debtors converted their case to Chapter 7. (ECF No. 11). John Patrick Lowe was appointed as the Chapter 7 Trustee ("Trustee"). (*Id*.). When the Court converted this case, Debtors' Schedule F listed BANA as a general unsecured creditor. (ECF No. 10). Initially, Trustee deemed Debtors' case a no-asset case. (Chapter 7 Trustee's Report of No Distribution, Nov. 13, 2013). Debtors received a Chapter 7 discharge on January 16, 2014, (ECF No. 18), and their bankruptcy case was closed on January 17, 2014, (ECF No. 19).

Debtors moved to re-open their bankruptcy case on January 10, 2018 so they could amend their Schedules A, B, and C to reflect that their real property located at 1414 E. Rosewood was in Beeville, Texas—not Katy, Texas. (ECF No. 22). Debtors also added to Schedules A/B causes of action filed in the Bee County Matter. (ECF No. 22). The Bee County Matter includes claims against BANA for wrongful foreclosure and adverse possession. (*Id*.). Debtors amended their Schedule C to exempt the Bee County Matter. (ECF No. 30).

On February 6, 2018, Trustee filed a Request for Notice of Assets indicating May 7, 2018 as the last date for filing proofs of claim. (ECF No. 28). On February 9, 2018, the Clerk of Court

3

issued an Order Fixing Last Date for Filing Proof of Claim, Combined With Notice Thereof, and BANA was included on the attached Certificate of Notice. (ECF No. 29).

Trustee objected to Debtors' claimed exemption of the Bee County Matter in the amended schedules. (ECF No. 31). Debtors reached an agreement with Trustee regarding prosecution of the Bee County Matter, and Trustee filed a Motion to Approve a Settlement Agreement between Trustee and the Debtors Regarding Trustee's Objections to Exemptions ("Settlement Agreement") (ECF No. 35). The Settlement Agreement reflects Trustee and Debtors' agreement to prosecute jointly the Bee County Matter, and that Debtors and Trustee would equally divide any recovery from the Bee County Matter. BANA was served notice of the Settlement Agreement and did not object. (ECF No. 35). The Court issued an Agreed Order Granting Motion to Approve Settlement Agreement Between the Trustee and the Debtors Regarding Trustee's Objections to Exemptions ("Settlement Order") (ECF No. 36).

On June 4, 2018, Trustee filed an Application to Employ The Law Office of Bill Clanton, P.C. as Special Litigation Counsel for the Bankruptcy Estates ("Clanton Application") (ECF No. 38). The Clanton Application includes as an attachment the retainer agreement between Trustee and The Law Office of Bill Clanton, P.C. ("Clanton"), which contains a provision allowing Clanton to associate with co-counsel. (ECF No. 38-2). BANA was served notice of the Clanton Application. (ECF No. 38-3). The Court granted the Clanton Application ("Clanton Application Order") (ECF No. 39). Thereafter, Trustee withdrew his no asset report. (ECF No. 42).

More than two years after the Court entered the Clanton Application Order, BANA filed its Motion to Prohibit Compensation (ECF No. 45),[3] which argued HWH cannot receive legal fees

---

[3] Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus") filed a joinder and adoption by reference (ECF No. 52). Trustee responded (ECF No. 60), to which Debtors joined and adopted by reference (ECF No. 77). BANA replied (ECF No. 64), to which Fannie Mae and Seterus joined and adopted by reference (ECF No. 68). After the Court read its oral ruling into the record on Friday, August 27, 2021, BANA stated it withdrew the

4

and expenses for its work in the Bee County Matter because only Clanton—and not HWH—received the Court's permission to serve as counsel. BANA also filed the Motion for Clarification and Motion to Compel (ECF No. 51),[4] The Motion for Clarification asked the Court to explain which parties had the right to prosecute the Bee County Matter; the Motion to Compel asked the Court to require the designated parties in the Bee County Matter to mediate. Trustee then filed the Application *Nunc Pro Tunc* to Employ HWH (ECF No. 57).[5] The Court heard arguments at a hearing on August 10, 2021. BANA's request to compel mediation was denied at the hearing (ECF No. 87).

PARTIES' CONTENTIONS AND LEGAL ANALYSIS

The parties raised numerous issues in multiple motions. The Court will address the arguments contained in each motion, taking each issue in turn.

I. **Motion to Prohibit Compensation**

BANA's Motion to Prohibit Compensation argues HWH cannot serve as counsel in the Bee County Matter because the Court only approved Clanton's employment. Moreover, BANA contends HWH cannot receive compensation because HWH did not receive the Court's permission to represent the estate in the Bee County Matter as required by 11 U.S.C. § 327. In response, Trustee argued BANA does not have standing to object to employment of HWH as special litigation counsel. Additionally, Trustee argues that HWH can serve as Clanton' co-counsel in the Bee County Matter because Clanton Application Order includes as an attachment

---

Motion to Prohibit Compensation at the August 10, 2021 hearing. The docket does not reflect that BANA withdrew the Motion to Prohibit Compensation, so the Court provided an oral ruling on the motion.

[4] Fannie Mae and Seterus filed a joinder and adoption by reference (ECF No. 53). Trustee responded (ECF No. 59), to which Debtors joined and adopted by reference (ECF No. 76). BANA replied (ECF No. 65), to which Fannie Mae and Seterus joined and adopted by reference (ECF No. 69).

[5] Debtors filed a joinder and adoption by reference (ECF No. 80). BANA objected (ECF No. 72), to which Fannie Mae and Seterus joined and adopted by reference (ECF No. 73).

the Trustee and Clanton's retainer agreement, which contains a provision allowing Clanton to associate with co-counsel. The Court will review each argument in turn.

**A. BANA'S Standing to Serve as Counsel in the Bee County Matter**

As a preliminary matter, the Court must address Trustee's argument that BANA cannot file its Motion to Prohibit because BANA does not have standing due to its failure to file a proof of claim. The Court agrees with Trustee that BANA has not filed a proof of claim; however that fact is not dispositive of BANA's standing. Initially, this case was a no-asset case. (Chapter 7 Trustee's Report of No Distribution, Nov. 13, 2013). After Debtors amended their Schedules, however, Trustee filed a Request for Notice of Assets setting the proof of claim deadline as May 6, 2018. (ECF No. 28). The Clerk of Court issued the notice by first class mail to the matrix, which included BANA. (ECF No. 29). After Fannie Mae filed Notice of Removal on October 31, 2018 in an attempt to remove the Bee County Matter to this Court, (ECF No. 41), Trustee withdrew the no-asset report on the same day, (ECF No. 42).

The Federal Rules of Bankruptcy Procedure[6] provide procedure for when an asset is later discovered in what was initially a no-asset case. Under Rule 2003(c)(5):

> If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

Fed. R. Bankr. P. 2003(c)(5) (West 2021).

Here, the Clerk's Office issued its Order Setting Proof of Claims Bar Date (ECF No. 29) after Trustee was on notice that the Bee County Matter could result in assets available to pay a

---

[6] Hereinafter, the Federal Rules of Bankruptcy Procedure shall be referred to as the "Rule(s)."

dividend to creditors.[7] The Bee County Matter remains pending. Until BANA loses or settles the Bee County Matter, there is no asset to benefit the estate. Indeed, BANA could prevail at the county court, and the estate would receive no more property than before. Unless and until resolution of the Bee County Matter results in an asset of the estate, there are no assets to administer in this case. Accordingly, the Court is unpersuaded by Trustee's argument that BANA's failure to file a proof of claim causes BANA to lack standing because there is still no asset to distribute.

Second, Trustee argues BANA does not have standing to object to HWH's compensation for work in the Bee County Matter because HWH's employment will not pecuniarily affect BANA. In support, Trustee cites **In the Matter of Technicool Sys., Inc.**, 896 F.3d 382, 385–86 (5th Cir. 2018). **Technicool Systems** describes the standard for ascertaining a party's standing in a bankruptcy appeal, not standing at the trial level. *See id.* The Fifth Circuit held "a bankruptcy *appellant* must instead [of Article III standing] show that he was 'directly and adversely affected pecuniarily by the order of the bankruptcy court." *Id.* at 385 (emphasis added). Because this Court has yet to enter an appealable order, the Court rejects Trustee's argument that the standard for standing enumerated in **Technicool Systems** applies here.

Rather, parties in interest have standing in a bankruptcy case. *See* **In re Cyrus II P'ship**, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (citing **Magnolia Venture Cap. Corp. v. Prudential Sec., Inc.**, 151 F.3d 439, 445 n. 9 (5th Cir. 1998)). While the Code does not define a party in interest, the term broadly includes debtors, creditors, trustees, and others. *See e.g.,* **Kipp Flores Architects**, 852 F.2d at 413; Fed. R. Bankr. P. 2002. Here, BANA is a creditor listed on Schedule

---

[7] This Court remanded the Bee County Matter back to state court. Adv. No. 18-05242-cag, ECF No. 45. The United States District Court for the Western District of Texas affirmed this Court's remand order on appeal. Adv. No. 18-05242-cag, ECF No. 64.

F for two unsecured credit card debts and an unknown amount on a real estate mortgage (ECF No. 10, Schedule F). As a creditor, BANA is a party in interest. Therefore, the court finds that BANA has standing to file its Motion for Clarification and Motion to Compel.

### B. HWH's Ability to Seek Compensation

BANA filed a Motion to Prohibit HWH from Seeking Compensation. Section 330 of the Code allows for attorneys approved by the court to seek compensation. 11 U.S.C. § 330(a). As discussed below, the Court approves the Application *Nunc Pro Tunc* to Employ HWH. Because the Court permits HWH to represent the estate and Debtors in the Bee County Matter, and the Code allows HWH to seek compensation, the Motion to Prohibit Compensation is hereby denied.[8]

### II. BANA's Motion for Clarification and Motion to Compel

BANA's Motion for Clarification and Motion to Compel contend the Settlement Order provides Clanton—not HWH—will represent Debtors and the estate in the Bee County Matter. BANA, therefore, seeks clarification as to: (1) the identity of the parties entitled to pursue claims against BANA in state court, and (2) the parties' litigation counsels approved by this Court. Additionally, BANA requested that the Court compel the Bee County Matter to mediation. The Court already ruled at the August 10, 2021 hearing that it will not compel mediation. That ruling is incorporated herein. Therefore, the Motion to Compel is denied. The Court will address the issues raised in the Motion for Clarification.

In response to BANA's Motion for Clarification, Trustee argues that this Court does not have subject matter jurisdiction to hear BANA's motion because the Court already determined it did not have subject matter jurisdiction over the Bee County Matter (Adv. No. 18-05242, ECF No. 45). BANA's Reply clarifies that its motion seeks to determine the identities of parties authorized

---

[8] *See infra* note 3.

8

to pursue and settle claims against BANA pursuant to the Settlement Agreement entered in this Court.

### A. Subject Matter Jurisdiction

As a preliminary matter, the Court must address whether it has subject matter jurisdiction to consider BANA's Motion for Clarification. The Supreme Court unambiguously stated in **Travelers Indem. Co. v. Bailey** that a "[b]ankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." 557 U.S. 137, 151 (2009) (citing **Local Loan Co. v. Hunt**, 292 U.S. 234, 239 (1934)) (addressing whether a bankruptcy court had subject matter jurisdiction to enter "clarifying orders"). This Court entered the Settlement Order. Accordingly, under **Travelers Indem.**, the Court has subject matter jurisdiction to interpret and enforce its own order. Therefore, the Court rejects Trustee's objection and will address BANA's arguments advanced in its Motion for Clarification.

### B. The Clanton Application Order Permits Association with HWH

In the Motion for Clarification, BANA argues the Clanton Application and the Clanton Application Order do not mention employment of HWH, so the Court only authorized employment of Clanton. In his Response, Trustee argues the terms of the contract underlying Clanton Application approved by the Court permit Clanton to engage co-counsel at his discretion with no additional cost to the Debtors or the estate.

The Court finds no binding precedent that addresses the breadth of co-counsel associating clauses in applications to employ professionals under 11 U.S.C. § 327(a). As such, general principles of contract interpretation will guide the Court's reading of the Clanton Application and Clanton Application Order. When the language of a contract is in dispute, the Court must "first look to the plain language of the contract to determine whether it is ambiguous." **Horn v. State**

9

*Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (citing *Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679,681 (5th Cir. 2000) (applying Texas law)). Whether a contract is ambiguous is a question of law in Texas. *Horn*, 703 F.3d at 738 (citing *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010)). Language is ambiguous "if its plain language is amenable to more than one reasonable interpretation." *Horn*, 703 F.3d at 738 (quoting *Nautilus Ins. Co. v. Country Oaks Apts. Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009)). If the language is unambiguous, the Court must apply its plain meaning and enforce the contract as written. *Horn*, 703 F.3d at 738 (citing *Tex. v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006)).

Here, the retainer agreement attached as Exhibit A to the Clanton Application contains a paragraph titled "Associating Counsel," which reads in whole: "We may bring in and associate with other attorneys at our discretion and expense. Under no circumstances will such result in an increased fee or diminished recovery to the client." (ECF No. 38-2). The Court finds this language is not open to more than one reasonable interpretation. The retainer agreement clearly states that Clanton can employ co-counsel. The Court finds unavailing BANA's argument that the Clanton Contract did not mention HWH, and thus HWH cannot be employed as a professional in this case. BANA received notice of the Clanton Application and the subsequent Clanton Application Order. Despite being on notice, BANA did not object. Because the contractual language approved in the Clanton Application Order is sufficiently broad, the Court finds that Clanton is permitted to associate with HWH as co-counsel.

### C. Parties Approved to Prosecute the Bee County Matter and their Counsel

Second, BANA's Motion to Clarify asks the Court to clarify which parties have a right to prosecute the Bee County Matter by interpreting its Settlement Order. BANA asks this Court to

"clarify the identity of the parties entitled to pursue claims against BANA" in the Bee County Matter "and the parties' litigation counsels approved by this Court" so that it does not engage in piecemeal settlement. (ECF No. 51).

While this Court understands BANA's concern regarding settlement, the Settlement Order is clear. The order uses the plural noun "Debtors" in its title, indicating that the Settlement Agreement includes both Mr. and Mrs. Ramirez. The Court takes judicial notice that Mr. and Mrs. Ramirez are co-debtors in this case. (ECF No. 22). Both Mr. and Mrs. Ramirez claimed an exemption in the Bee County Matter, (ECF No. 30), and both Mr. and Mrs. Ramirez entered into the Settlement Agreement with the Trustee, (ECF No. 35). The paragraph describing the Settlement Agreement uses plural noun "Debtors" four times and specifically states "the Debtors and the Trustee will jointly prosecute the litigation claims." (ECF No. 35). BANA was served notice of the proposed Settlement Agreement but did not object. The Court therefore interprets its Settlement Order as allowing both Debtors and the Trustee to prosecute jointly the Bee County Matter.

Part of BANA's concern is that only Mr. Ramirez—and neither Trustee nor Mrs. Ramirez—is a party in the Bee County Matter. In response, the Trustee argues that he is empowered to appoint someone to prosecute the Bee County Matter on his behalf. Trustee is, indeed, capable of delegating the litigation. Because Trustee must pursue assets of the estate, delegation to persons who have knowledge of the operative facts of litigation which may result in an asset logically improves the efficiency of asset pursuit. Here, the Bee County Matter centers on a wrongful foreclosure claim. Debtors, because they incurred the mortgage which they claim was wrongfully foreclosed, have more knowledge of the pertinent facts than the Trustee. Trustee's delegation was proper.

11

### III. Trustee's Application *Nunc Pro Tunc* to Employ HWH as Special Litigation Counsel for the Bankruptcy Estate

Trustee's Application *Nunc Pro Tunc* to Employ HWH involves several sub-issues. First, BANA argues that the Supreme Court in ***Roman Catholic Archdiocese of San Juan, Puerto Rico v. Yali Acevdeo Feliciano,*** 589 U.S. ___, 140 S. Ct. 696, 700–01 (2020) ("*Acevedo*") eliminated bankruptcy courts' power to issue orders nunc pro tunc. Second, the Court must decide whether to approve HWH's employment and whether to do so nunc pro tunc. In summary, Court concludes that *Acevedo* is inapplicable under the circumstances and approves the Application *Nunc Pro Tunc* to Employ HWH, provided that HWH files a compensation statement pursuant to 11 U.S.C. § 329.

#### A. This Court has Authority, Generally, to Issue Nunc Pro Tunc Orders to Employ Counsel

The Supreme Court's recent ruling in *Acevedo* has brought into question bankruptcy courts' authority to issue nunc pro tunc orders. 140 S. Ct. at 700–01 (2020); *see generally* 3 Collier on Bankruptcy ¶ 327.03 (16th 2021). BANA repeats this concern and cites a case from another bankruptcy court to bolster its contention that the Court should deny the nunc pro tunc application and prohibit compensation to HWH.

After a complex procedural history litigating the legal personhood of entities within the Catholic Church and First Amendment issues, 140 S. Ct. at 697–699, *Acevedo* was remanded to the Court of First Instance (of Puerto Rico), 140 S. Ct. at 699. Then, the Archdiocese removed the case to the U.S. District Court for the District of Puerto Rico on the grounds that the trust's pending bankruptcy imbued the District Court with subject matter jurisdiction. 140 S. Ct. at 700. During the federal proceedings, the Court of First Instance issued injunctions and seizure orders. *Id*. at 701. The District Court remanded the case to the Court of First Instance using a nunc pro tunc order, effective as of a date five months prior. *Id*. at 700. The nunc pro tunc order was inappropriate

12

because "nothing occurred in the District Court" on that date; rather, that date reflects when the Bankruptcy Court dismissed the trust's proceeding, and thus curtailing the Archdiocese's subject matter jurisdiction argument. *Id*. at 701. The Court ultimately held that the Court of First Instance did not have jurisdiction to take the actions it took because the case had not yet been remanded. *Id*.

The Supreme Court used strong language to caution against issuing orders nunc pro tunc. *Id*. The Court's chastisement that "[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history – creating 'facts' that never occurred in fact" must be read in light of the procedural and factual history of the *Acevedo* case. *Id*.

Two lines of reasoning have emerged as courts grapple with interpreting *Acevedo*'s strong language regarding nunc pro tunc orders. Many courts have paid particular attention to *Acevedo*'s prohibition that courts cannot "cannot make the record what it is not" as they issue denials. *Id*. (citing *Mo. v. Jenkins*, 495 U.S. 33, 49 (1990)) (internal quotation marks omitted); *see, e.g.*, *In re Boisaubin*, 614 B.R. 557, 563–64 (B.A.P. 8th Cir. 2020) (applying the Code's revesting upon abandonment as of the date of filing pursuant to § 554 "was neither a correction of the record nor the creation of facts"). These denials are common in cases where the moving party did not timely file for the relief requested. *See, e.g.*, *In re Nilhan Dev., LLC*, 620 B.R. 385, 403–06 (Bankr. N.D. Ga. 2020) (finding that *Acevedo* prohibited granting nunc pro tunc authorization of a loan transaction outside the ordinary course of business which did not comport with § 364 so the court would never have approved the financing because retroactive relief would write facts into the record that never would have come to exist); *Travelers Indemnity Co. of Am. v. Harris*, No. 3:19-cv-00722-GSC, 2021 WL 2401025, at n. 1 (S.D. Ill. June 11, 2021) (*Acevedo* disallows courts from using a nunc pro tunc order to correct a party's untimely filing); *McNeill v. Hinson*, No.

3:18-cv-00189-MR, 2020 WL 8617627, at *1 (W.D.N.C. Dec. 8, 2020) (finding that *Acevedo* prevents courts from nunc pro tunc ordering that a pleading was timely filed when it was not because doing so would revise the record to reflect a fact that did not occur); *In re Parker*, 624 B.R. 222, 236 (Bankr. W.D. Pa. 2021) (finding that *Acevedo* prevents nunc pro tunc reinstatement of the automatic stay because the Court was not previously asked to do so); *In re Zvoch*, 618 B.R. 734, 741 (Bankr. W.D. Pa. 2020) (granting nunc pro tunc order "would not reflect reality" when the need for the order arose from the debtor's failure to seek pre-approval for a car financing agreement, not the court's inadvertence).

Other cases heeding the revisionist history language also involve denials where the nunc pro tunc order would purport to resolve a jurisdictional defect, as in *Acevedo*. Compare *In re Telles*, No. 8-20-70325-reg, 2020 WL 2121254, at *4 (Bankr. E.D.N.Y. Apr. 30, 2020) (finding that courts "cannot grant *nunc pro tunc* relief from the automatic stay to cure a jurisdictional defect in a state court" action over the property of the estate) with *In re SS Body Armor I, Inc.*, No. 10-11255(CSS), 2021 WL 2315177, at *1 (Bankr. D. Del. June 7, 2021) ("*Acevedo* does not prohibit courts from entering nunc pro tunc orders where there are no jurisdictional defects."); *see also In re Merriman*, 616 B.R. 381, 392 (B.A.P. 9th Cir. 2020) (concluding *Acevedo* held nunc pro tunc orders may not create jurisdiction where none exists and, as such, does not preclude retroactive relief from bankruptcy's automatic stay); *In re Miller*, 620 B.R. 637, 640–41 (Bankr. E.D. Cal. 2020) (following *Merriman*). In short, where a nunc pro tunc order rewrites history, the order is inappropriate.

All but one time a court analyzed *Acevedo* in the context of an application to grant retroactively an application to employ professionals, the court determined that *Acevedo* did not preclude such action. Some courts, despite determining that *Acevedo* renders nunc pro tunc

approval inappropriate, rationalize approving retroactive relief because Chapter 3 of the Bankruptcy Code anticipates and authorizes retroactive relief. *See, e.g.*, **In re Benitez**, No. 8-19-70230, 2020 WL 1272258, at *1–2 (Bankr. E.D.N.Y. Mar. 13, 2020) (concluding despite its "reading of *Acevedo* … that utilizing *nunc pro tunc* orders to approve retention of estate professionals retroactive to some date prior to the actual date of court approval is inappropriate," that "once having been retained, the bankruptcy court is free to compensate [the estate professional] for services rendered to the estate at any time") (citing 11 U.S.C. §§ 327, 330); **In re Wellington**, 628 B.R. 19, 25 (Bankr. M.D.N.C 2021) ("While *Acevedo* may have eliminated *nunc pro tunc* retention orders, which effectively requires a court to 'create' antecedent findings supporting employment where no record previously existed, courts are not prohibited from compensating professionals under § 330 for work performed prior to the effective date of employment" because such work is common in bankruptcy litigation). The Western District of North Carolina concluded that *Acevedo*'s nunc pro tunc "nomenclature was imprecise – not that retroactive approval of attorneys violates the statute or the relevant rules" so the practice "has not been contravened by *Acevedo*." **Hagler, et. al. v. High Tension Ranch, LLC, et. al.**, No. 3:20-CV-00564-GCM, 2021 WL 3622149, at *4 (W.D.N.C. Aug. 16, 20201). Moreover, the United States Bankruptcy Court for the Southern District of Texas concluded "[o]rders that retroactively authorize employment do not alter the historic landscape" of the case to distinguish *Acevedo*. **In re Mohiuddin**, 627 B.R. 875, 882 n. 5 (Bankr. S.D. Tex. 2021).

The only instance since *Acevedo* where a court did not grant a nunc pro tunc application to employ, the court only denied the application because the party had not timely made the required appropriate disclosures so relief would reinvent the record. **In re Grinding Specialists, LLC**, 625 B.R. 6, 15 (Bankr. D.S.C. 2021). Such reasoning is like the cases focusing on the "revisionist

15

history" language and is distinct from the reasoning regarding employment of professionals under Chapter 3 of the Code.

This Court reads *Acevedo* as holding that courts may not issue nunc pro tunc orders as limited to a prohibition on creating facts that never were before the court. The Court further finds persuasive other courts' reasoning that *Acevedo* does not prohibit retroactive employment of professionals.

Here, under either theory, *Acevedo* does not prohibit approving the Trustee's Application *Nunc Pro Tunc* to Employ HWH. On the one hand, the language about Clanton engaging co-counsel in the Clanton Application and Clanton Application Order is broad enough to encompass HWH. BANA was on notice of the Settlement Order, which sat in suspense for twenty-one days to give BANA opportunity to object to the language in the underlying contract. After no objection was filed, this Court entered the Clanton Application Order. Moreover, as BANA reiterates in many of its moving papers (*see, e.g.*, ECF No. 45), BANA has known that HWH purported to represent "both the trustee and Mr. Ramirez" since, at the latest, May 31, 2019. Under these facts, granting HWH's employment nunc pro tunc would not rewrite history but rather would explicate the already-in-the-record fact that HWH is Clanton's co-counsel. Furthermore, as other courts addressing this issue have concluded, the Bankruptcy Code anticipates and authorizes retroactive employment of professionals. Therefore, the Court finds it has legal authority to grant the Trustee's Application *Nunc Pro Tun* to Employ HWH.

**B. The Court Grants the Application *Nunc Pro Tunc* to Employ HWH**

For the following reasons, the Court grants the Application *Nunc Pro Tunc* to Employ HWH.

1. **The Application *Nunc Pro Tunc* to Employ HWH Comports with Federal Rule of Bankruptcy Procedure 2014 and Local Rule 2014**

Courts may grant an application to employ professionals only if the application complies with the Bankruptcy Code and Rules. Section 327(a) requires that the professional to be employed does not hold or represent an interest adverse to the estate and is disinterested. 11 U.S.C. § 327(a). Federal Rule of Bankruptcy Procedure 2014 and Local Rule 2014 describe the procedures regarding employment of professional persons. Additionally, Rule 2016(b) requires every attorney, whether or not the attorney applies for compensation, to file a statement of compensation under Section 329, which includes whether the attorney has shared or agreed to share compensation with any other entity. Fed. R. Bankr. P 2016(b); 11 U.S.C. § 329(a).

Here, the Court finds Trustee on behalf of HWH filed an Application for Employment that comports with Rules 2014 and 2016, along with Local Rule 2014. The Court recognizes that HWH and Clanton disclosed their fee-sharing agreement at the August 10, 2021 hearing as being a one-third contingency fee to Clanton and a two-thirds contingency fee to HWH. Disclosure on the hearing record is not equivalent to filing a Section 329 statement or complying with Rule 2014 and Local Rule 2014(b). At the oral ruling, the Court ordered HWH to file a Section 329 statement; HWH has complied with that request as of the date of entry of this Order.

2. **The Court Grants the Application *Nunc Pro Tunc* to Employ HWH on a Nunc Pro Tunc Basis**

The standard to issue a nunc pro tunc order is "extraordinary circumstances." ***In re Triangle Chems.***, 697 F.2d 1280, 1289 (5th Cir. 1983). While the purpose of such a standard in this context is to discourage professionals from general non-observance of Section 327, the Fifth Circuit standard is flexible and rooted in the equity powers of the bankruptcy court. Collier on Bankruptcy ¶ 327.03; ***In re Triangle Chems.***, 697 F.2d at 1289. Because "case law is inconsistent

about what exactly constitutes 'extraordinary circumstances' sufficient to warrant *nunc pro tunc* approval," courts balance the equities to determine what is appropriate. ***In re Office Prods. of Am., Inc.***, 136 B.R. 675, 683 (Bankr. W.D. Tex. 1992).

Here, the equities weigh in favor of granting the application nunc pro tunc. Previously, this Court approved Clanton's employment. (ECF No. 39). The underlying contract in that order granted Clanton discretion to employ co-counsel. (*Id.*) BANA received notice of the Clanton Application, including its co-counsel provision, and did not object. Then Clanton hired HWH based on its experience in litigating complex consumer cases, especially against BANA and Seterus. Since at least May 31, 2019, BANA has known that HWH purported to represent "both the trustee and Mr. Ramirez." (ECF 45-2). Considering BANA was aware of HWH's representation, along with the fact BANA did not object at various stages, the Court concludes BANA is not prejudiced or forced to litigate by surprise if HWH is approved as counsel nunc pro tunc.

On the other hand, the estate and creditors may benefit if HWH continues prosecuting the Bee County Matter. As stated numerous times in the moving papers (*see, e.g.*, ECF No. 57) and reiterated at the hearing, if successful, HWH will share Clanton's contingent fee. Employing HWH imposes no additional cost on the estate. Rather, if HWH prevails in its litigation of the Bee County Matter, the estate could benefit and creditors may receive a payout. The equities also weigh against depriving the estate of its litigation counsel this far into the Bee County Matter. Considering the foregoing, the Court concludes the equities support approving the Application *Nunc Pro Tunc* to Employ HWH. The employment is hereby granted, subject to HWH filing the Section 329 statement within seven calendar days of the Court's August 27, 2021 oral ruling.[9]

---

[9] HWH filed a Disclosure of Compensation of Attorney for Debtors on September 2, 2021 (ECF No. 92).

THEREFORE, the Court finds that the Trustee, Mr. Ramirez, and Mrs. Ramirez are entitled to pursue claims against BANA. The Court further finds that, based on the previous rulings, both Clanton and HWH represent the estate in the Bee County Matter.

## CONCLUSION

It is therefore ORDERED that the Motion to Prohibit Humphreys Wallace Humphreys P.C. From Seeking Compensation (ECF No. 45) is DENIED;

It is FURTHER ORDERED that the Application *Nunc Pro Tunc* to Employ Humphreys Wallace Humphreys, P.C. as Special Litigation Counsel for the Bankruptcy Estates (ECF No. 57) is GRANTED; and

It is FURTHER ORDERED that Mr. Leroy Ramirez, Mrs. Erika Herrera Ramirez, and the Chapter 7 Trustee are the parties entitled to pursue the claims in *Leroy Ramirez v. Bank of America, N.A., et al.*, in the 156th Judicial District, Bee County, TX (Cause No. B-17-1423-CV-B).

# # #